## TOWN OF NEWFANE *v.* TOWN OF DUMMERSTON.

### *Pauper.    Grand List.*

An actual commitment to jail is sufficient to cast the duty of providing for the relief of an imprisoned pauper, who stands in need of such relief, on the jailor and on the overseer of the town where the jail is situated, after proper notice has been given agreeably to the statute, and this duty is in no way dependent upon the regularity of the process on which he is committed.

A settlement in a town having been established, the legal presumption is until the contrary is shown, that it continues there.

Under the pauper act of 1817, residence is computed only from the time of registry.

Under the pauper act of 1823, no residence prior to that time, without registry, can be included to make a future settlement.

Where a person leased a farm to carry on at the halves, and the same was put in the list to himself and the lessor jointly, *held* that such person did not hold the land in his " own right " so as to give him a settlement under the pauper act of 1817.

ASSUMPSIT to recover for money expended in support of George Bemis, a pauper, confined in the county jail at Newfane. Plea, the general issue and trial by jury.

It appeared . that Bemis was confined in close jail, at the time the support was afforded, by virtue of a mittimus, which was read without objection, except as to the legality of the commitment, as therein described, and consequent detention. This objection, which becomes immaterial under the decision of the Court, was overruled by the court, to which the defendant excepted. The defendant claimed that such commitment would not constitute such a confinement as would justify the plaintiffs in furnishing support. No question was made but that Bemis was in need of relief.

The only other question was in relation to the settlement of Bemis in the town of Dummerston. It was conceded his father had a settlement there, prior to the spring of 1821, when he removed with his family to Townshend, this son George Bemis being then five years of age. He leased a farm in Townshend, which was stocked by the owner of the farm and carried on by said Bemis senior, at the halves, until March or April, 1830, when he returned to Dummerston. During the time of car-

rying on the farm, that and the stock were set in the grand list, jointly to the landlord and Bemis, and the latter by the terms of the lease, was to pay one-half of the taxes, which, the defendant proposed to show, were more than $120 for five successive years.

There was no evidence of any registration of the name of Bemis or his family in the town clerk's office in Townshend.

The court held that the legal settlement of the pauper was in the town of Dummerston, to which the defendant excepted.

*Butler & Wheeler*, for the defendants.

———————————— for the plaintiff.

KELLOGG, J. This is an action of assumpsit for the recovery of the expenses of the support of George Bemis, a pauper confined in the county jail in the town of Newfane, whose legal settlement, as alleged by the plaintiff, is in the town of Dummerston, and the action is founded on Comp. Stat. p. 133, § 16. The questions made on the argument relate, first, to the proof that the pauper was " committed " to the jail, and, secondly, to the proof of the pauper's legal settlement in Dummerston.

I. It is claimed that the warrant on which the pauper was committed to jail was illegal and void, so that it could not furnish any justification for his arrest and detention, and that he was not within the purview of the statute, or in any legal sense " committed " to the the jail. If a pauper imprisoned in jail is in need of relief, it would be a very strict construction of the statute which would withhold it on on the ground of the illegality of his commitment and detention, and would leave him to starve while awaiting the determination of that question. The statute provision, being for a charitable and humane purpose, should be construed liberally. We are of opinion that an actual commitment to the jail is sufficient to cast the duty of providing for the relief and support of an imprisoned pauper, who stands in need of such relief and support, on the jailor, and on the overseer of the poor of the town in which the jail is situated, after the requisite notice has been given, agreeably to the stat-

ute ; and that this duty is not in any degree dependent on the regularity and validity of the process upon which the commitment was made.   In this view, the case does not call for the consideration of the objections which have been suggested against the legality of the process on which the pauper was committed to the jail.

II. It is not disputed that the pauper's father had, prior to the year 1821, a legal settlement in Dummerston, and that the pauper's settlement is there now,—he having acquired no settlement for himself, and being entitled to the settlement of his father,—unless his father subsequently gained a new settlement in the town of Townshend.   A settlement in Dummerston being established, the legal presumption is, till the contrary is shown, that it continued there ; and it is therefore incumbent on the defendant to prove a change of settlement.

1. The defendant undertook to show that the pauper's father acquired a settlement in Townshend in two distinct ways, the first of which was by a residence in that town for the term of seven years and more, as provided in the eighth clause of the first section of the act of 1817.   (Slade's Comp. Laws, p. 282.) That clause with its proviso, required an act of registry, in addition to the fact of residence, in order to make a change of settlement by residence operative or complete,—the proviso expressly declaring that no person should gain a settlement in any town by mere residence without such registration, and that residence to gain a settlement should be computed only from the date of such registry. This proviso was repealed by an act passed October 21st, 1823, (Slade's Comp. Laws, p. 335, No. 8,) but the repealing act declared that no residence before that time had under the eighth clause aforesaid, without any registry as required by said proviso, should be deemed to have any effect towards giving or gaining any future settlement of any person.   As mere residence without registration, prior to the repeal of the proviso by the act of 1823 above mentioned, would have been wholly ineffectual towards giving or gaining a settlement, we think that it was incumbent on the defendant when seeking to establish a change of settlement, by reason of the residence of the pauper's father in Townshend prior to the passage of the act of 1823, to show af-

firmatively the fact of registry, as well as of residence. As the case shows that there was no evidence of any registration of the pauper's father or his family, in Townshend, in compliance with the requirements of the proviso to the eighth clause of the first section of the act of 1817, above cited, it necessarily follows that his residence in that town, when considered with reference to its effect in gaining a settlement for him in that town, can be computed only from the time of the repeal of that proviso by the act of 1823, and his residence in that town prior to the passage of 1823 being excluded, it is not claimed that his subsequent residence there was sufficient to gain a settlement for him.

2. The defendant also claimed that the pauper's father acquired a settlement in Townshend in another way,—by a residence there with ratable estate, held in his own right, exclusive of his poll, set in the list of that town, at the sum of sixty dollars or upwards, for five years in succession, as required in the fourth clause of the first section of the act of 1817. (Slade's Comp. Laws, p. 381.) It appears that the pauper's father, after his removal to Townshend in the year 1821, took a farm in that town as a tenant or lessee, which was stocked by the owner or lessor, and carried it on " at the halves " until the spring of 1830 when he returned to Dummerston ;—that, during the time of carrying on the farm, both the farm and stock were set in the grand list to himself and the owner jointly, and that he, by the terms of the lease under which he took the farm, was to pay one-half of the taxes on the farm and stock ;—and the defendant proposed to show by parol evidence (the several lists being lost,) that the half of the taxes upon these joint lists amounted to the taxes upon a list of more than one hundred and twenty dollars in all, for five successive years during the time of the residence of the pauper's father in Townshend. The county court held that the property so set in the lists, not being held by him in his own right, such lists did not come within the conditions of the statute in respect to the manner of gaining a settlement, and rejected the evidence. The language used in the statute,—" whose ratable estate, held in his own right, besides his poll, shall be set in the list of such town," etc.,—clearly excludes, as we think all ratable property to which the person listed has no other right than a right of temporary possession merely, as in the case of

property held by an executor, administrator, guardian, agent, bailee, or trustee ; and we are unable to regard such property when leased by a landlord to a tenant, as resting on any different ground.   It is the property of the landlord, and held in his right; and when set in the list to the landlord and the tenant jointly, as in this case, it might gain a settlement for the landlord if the other conditions of the statute were complied with ; but it could not aid the settlement of the tenant, who has nothing but a mere right to the temporary possession of it.   We find no error in the decision of the county court upon this part of the case.

Judgment of the county court for the plaintiff affirmed.