TOWN OF WORCESTER v. TOWN OF EAST MONT-
PELIER.

*Pauper. Residence of under No. 42, Acts of 1886. Vested
Right.*

1. The liability of towns for the support of paupers is purely statutory.
2. Act No. 42, 1886, makes such liability dependent upon the residence of the
   pauper, without regard to any previous settlement.
3. And that residence is to be determined without reference to whether it
   was before or after the taking effect of the act.
4. Hence, where upon the taking effect of the act, the legal settlement of
   the pauper was in E., but the necessary residence in W., *held,* that
   thereupon E. ceased to be and W. became chargeable with his support.
5. W. would acquire no vested right by virtue of the fact that, under the
   previous law, E. was liable to and did support the pauper for a term of
   years.

This was an action brought to charge the defendant town with
the expense of supporting one Daniel Durfee, a · pauper, and
was tried by court at the March Term, Washington County,
1888, Rowell, J., presiding, upon an agreed statement of facts.

Judgment for the defendant. The plaintiff excepts.

The following is the agreed statement of facts :

"It is agreed that Daniel Durfee, for whose support this suit
is brought, was living with his father, Milo Durfee, in East
Montpelier in 1874. That Milo Durfee at that time had a legal
settlement in East Montpelier. That Milo Durfee in the fall of
1874 moved with his family (including Daniel) from East Mont-
pelier to Worcester. Daniel was born September 12, 1855.
Daniel has lived at his father's ever since they moved to Worces-
ter in 1874. In November, 1879, Daniel was so injured as to in-
capacitate him from labor. From the time Daniel became of
age (September 12, 1876,) until he was hurt in November, 1879,
he resided at his father's in Worcester, maintaining himself and
he had no family. From the time of the injury in November,
1879, to March 12, 1881, his father supported him. At the last

named date his father applied for help for him to the overseer of the poor of Worcester, and the overseer of Worcester applied to the overseer of the poor of the town of East Montpelier and from the date last mentioned until December 28th, 1886, the town of East Montpelier supported him at his father's house in Worcester, and on said last date the overseer of East Montpelier notified both said Milo Durfee and Worcester's overseer that East Montpelier would not support him any longer, as the law had been changed. East Montpelier has not since paid. March 22, 1887, the overseer of Worcester gave the overseer of East Montpelier the following notice:

"WORCESTER, VT., March 21, 1887.

"*To the Overseer of the Poor of East Montpelier, Vt.:*

"DEAR SIR:—This is to notify you that one Daniel Durfee is in destitute circumstances, and I have been called on to assist him as a pauper. I claim that his residence or settlement is in the town of East Montpelier, and shall charge you for any and all expense he may make this town from this time forth.

"E. M. HAMBLET,

"Overseer of the Poor of Worcester, Vt."

East Montpelier has since receiving said notice as well as since December 28, 1886, refused to provide for the support of said Daniel. The town of Worcester has paid since March 22, 1887, the sum of five dollars a week for his support, and has paid that since December 28, 1886, to March 22, 1887."

*S. C. Shurtleff*, for the plaintiff.

Statutes are prospective, not retrospective in their operation. Upon the enactment of the law of 1886, the rights and liabilities of towns continued exactly as they had been, until new rights and liabilities accrued by virtue of facts subsequently transpiring. R. L. s. 28; *Harris* v. *Townsend,* 56 Vt. 716; *Starksboro* v. *Hinesburgh,* 13 Vt. 215.

Under the law as it now is, all persons are transient who have not resided in a town for three full years. As the law formerly stood the town of East Montpelier was bound to support this

pauper. It did so by hiring him kept at his father's in Worcester. That made him in legal effect a resident of East Montpelier ; and the residence which he acquired during this five years and nine months must continue until he gains one elsewhere. *Danville* v. *Putney*, 6 Vt. 512 ; *Charleston* v. *Lunenburgh*, 23 Vt. 525 ; *Middlebury* v. *Waltham*, 6 Vt. 200 ; *Stamford* v. *Readsboro*, 46 Vt. 606.

*Pitkin & Huse*, for the defendant, argued in substance, as the court holds, citing on the question, what is a transient, *Berlin* v. *Worcester*, 50 Vt. 23.

The opinion of the court was delivered by

ROYCE, Ch. J. It appears from the agreed statement of facts upon which this case was heard, that under the law as it stood prior to the taking effect of No. 42 of the laws of 1886, approved Nov. 24, 1886, " to take effect from its passage," the legal settlement of the pauper was in the town of East Montpelier, which town supported him from the time of an application on his behalf for town aid, March 12, 1881, to Dec. 28, 1886, when it refused longer to aid him, on the ground that " the law had been changed." It further appears that from the time when the pauper became of age, Sept. 12, 1876, until sometime in Nov., 1879, a period of more than three years, he resided in the town of Worcester, maintaining himself and having no family, and thereafter continued to reside in Worcester while receiving town aid from East Montpelier as above stated.

The plaintiff contends that the pauper's legal residence in East Montpelier remains unaffected by the act of 1886, and that that town remains liable for his support until he shall acquire a residence elsewhere by virtue of acts subsequent to the passage of that law. The defendant insists that by virtue of sec. 13 of the act of 1886, which reads, " for all purposes under this act the residence of a person shall be in the town in which he last resided for a term of three full years, maintaining himself and family," the pauper acquired a legal residence in the town of Worcester, rendering that town liable for his support. If his

so living in Worcester, as above stated, constituted him a resident of that town within the meaning of section 13 of the act of 1886, and that section is constitutional, then the town of East Montpelier cannot be made chargeable by reason of his legal settlement being in that town. The popular signification of the word " reside " is, to live in a place ; to dwell ; to sojourn ; to stay ; and the presumption is, nothing appearing to rebut it, that the word was used by the Legislature in that sense, and it should be so defined. Giving it that definition there can be no doubt that the pauper was a resident of the town of Worcester, and that his last three years of continuous self-supporting residence was in that town.

It has long been settled in this State that the obligation of towns to support paupers rests upon statutory enactments designed to adjust corporate burdens placed upon towns. The litigation which has been had previous to the passage of the act of 1886, touching the obligation to support, has principally been directed to questions as to the settlement of paupers, or whether they were to be regarded as transient persons. What residence is necessary to gain a settlement, and what class of persons are deemed transients, are questions which have often been before this court, and no reference to the reported cases in which those questions have arisen seems to be necessary. The object of the act of 1886 seems to have been to make the obligation to support paupers entirely dependent upon their residence, without any reference to the place of their legal settlement. That the Legislature had the right to make such changes in the law relative to the future support of that class of persons as it thought proper, there can be no doubt. So the case at bar has to be determined upon the agreed statement of facts under the law as it was at the time the suit was commenced.

The act of 1886 repealed all sections of the R. L. then in force, providing how legal settlements might be acquired in a town, so as to oblige such town to relieve and support the persons acquiring the same in case of need, and substituted therefor the provision in section 13 of that act above quoted. The ques-

tion presented, then, is, not whether the act of 1886 shall be construed to be retroactive in the sense of affecting the rights and liabilities of towns or individuals in respect of the support of paupers prior to its taking effect, but whether it shall now be applied in determining the legal residence of paupers only to acts and facts subsequent to that time, or to acts and facts prior, as well.

It is claimed, substantially, in the case at bar, that the pauper having, under the law, as it stood prior to the act of 1886, a legal residence in the town of East Montpelier and not elsewhere; this legal residence or settlement was in some sense a vested right, which that act could not, constitutionally, or, at all events, should not, be construed to change or take away. If the effect of such a construction as is claimed by the defendant were to deprive the pauper of his right to a legal residence and to the town aid incident thereto, such a contention might have force. It will be observed that in *Starksboro* v. *Hinesburgh*, 13 Vt. 215, the authority most relied on by the plaintiff upon this point, the effect of holding that the repealing act of 1801 deprived the pauper of the settlement which he had acquired under the law of 1797, which it repealed, would have been to leave him without any settlement; and it is presumable that this point was regarded as the vital one in the determination of the case. In the case at bar the pauper has a legal settlement or residence entitling him to town aid, unquestionably, either in the plaintiff or defendant town, so that his rights are in no danger of prejudice; and the fact that prior to 1886 the pauper had a legal settlement in the town of East Montpelier gave the town of Worcester no vested right to have that settlement continue.

The remedy sought in this action is under the statute law as amended by the act of 1886, and therefore is virtually under that act. Section 13 provides, in explicit terms, that "for all purposes under this act the residence of a person shall be in the town in which he last resided for the term of three full years, maintaining himself and family." There is nothing to indicate that it was the intention of the Legislature to confine

this means of acquiring a residence to the time subsequent to the taking effect of the act. The language is clear and without any hint of such limitation. No question can be made in the case at bar at all events, as we have seen, as to the constitutionality of the section. The pauper having last resided for three full years, as the agreed statement shows, maintaining himself and having no family, in the town of Worcester, that town must, therefore, be held to be his legal residence until he acquires a different one under the provisions of law.

It was further claimed that the defendant might be made chargeable under section 2844 R. L., which inflicts a penalty for bringing a poor and indigent person into a town, with intent to charge such town with his support. A full and perfect answer to this claim is that it does not appear that the defendant brought the pauper into the town of Worcester. The pauper came to Worcester voluntarily and that town allowed him to remain. That did not constitute such a bringing into the town as the section contemplates.

*The judgment of the County Court is affirmed.*